1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  PHOUNG LUONG,[1]

11          Plaintiff,              No. CIV. S-04-CV-1728 PAN

12      vs.

13
    JO ANNE B. BARNHART,
14  Commissioner of Social Security,

15          Defendant.              ORDER
    _____/

16

17          The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to

18  proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19  Commissioner of Social Security ("Commissioner") denying an application for Supplemental

20  Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons

21  discussed below, the court will deny plaintiff's motion for summary judgment or remand and

22  grant the Commissioner's cross-motion for summary judgment.

23  /////

24  _____

25  [1]The court notes that multiple spellings for plaintiff's name appear in the record.  In briefs
    to this court, plaintiff appears in the case caption as "Phoung Luong."  Furthermore, this was the
    spelling offered by her during the March 13, 2002, hearing.  However, in many documents
26  prepared or signed by plaintiff, she spells her name "Phuong Luong."

1

I. Factual and Procedural Background

Plaintiff filed her initial claim for SSI on or about August 25, 1995.  In a decision dated October 30, 1997, an ALJ denied the claim.  Subsequent to that decision, plaintiff filed a second application on July 14, 1999, that the ALJ in this case denied on December 18, 2000. Plaintiff requested a review by the Appeals Council of this second denial on December 27, 2000. On January 12, 2001, plaintiff filed a third application that resulted in a favorable determination beginning January 1, 2001.  The Appeals Council, upon review of the December 18, 2000, denial, and in light of the January 2001 granting of benefits, remanded the case to the ALJ for a determination of whether or not disability existed from the time of the denial of plaintiff's initial application until the time benefits were ultimately granted.  Applying the principle of res judicata to the initial claim, the relevant period of review for the ALJ upon remand was limited to November 1998 through December 2000.  See Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988).

In a decision dated June 11, 2002, the ALJ determined plaintiff was not disabled during the period in question.[2]  The ALJ's decision became the final decision of the

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step

2

1 Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found

2 plaintiff has severe musculoskeletal strain affecting the back, muscle-tension headaches, a

3 depressive disorder and malingering, but that these impairments do not meet or medically equal a

4 listed impairment; the plaintiff has the residual functional capacity to perform the nonexertional

5 requirements of work except for the plaintiff is unable to perform skilled or semiskilled work,

6 but remains capable of performing unskilled work; plaintiff is limited to light work requiring

7 occasional lifting of no more than 25 pounds, frequent lifting of no more than 10 pounds, and

8 walking, standing, and sitting for up to eight hours with normal breaks; jobs exist in the national

9 economy in significant numbers that plaintiff could perform; and plaintiff is not disabled.

10 Administrative Transcript ("AT") 25.  Plaintiff contends the ALJ's finding that the plaintiff and a

11 third-party testifying on her behalf were not credible was not supported by substantial evidence;

12 the ALJ erred by not giving controlling weight to the opinion of the treating physician; and the

13 ALJ improperly relied upon the response of a vocational expert to an incomplete hypothetical

14 question.

15 II.  Standard of Review

16      The court reviews the Commissioner's decision to determine whether (1) it is

17 based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

18 record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

19 Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

20 Substantial evidence means more than a mere scintilla of evidence, but less than a

21 _____

22     five.
         Step five:  Does the claimant have the residual functional

23 capacity to perform any other work?  If so, the claimant is not
disabled.  If not, the claimant is disabled.  _____

24 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25      The claimant bears the burden of proof in the first four steps of the sequential evaluation

26 process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

3

1  preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

2  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a

3  reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

4  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

5  197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler,

6  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

7  detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

8  1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of

9  supporting evidence. Id; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If

10 substantial evidence supports the administrative findings, or if there is conflicting evidence

11 supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

12 Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

13 improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

14 1335, 1338 (9th Cir. 1988).

15 III. Analysis

16     a. The ALJ's Properly Assessed the Credibility of Plaintiff and the Third-Party.

17          The ALJ determines whether a disability applicant is credible, and the court defers

18 to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g.,

19 Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make

20 an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

21 v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

22 supported by "a specific, cogent reason for the disbelief").

23          In evaluating whether subjective complaints are credible, the ALJ should first

24 consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947

25 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment,

26 the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

4

1  medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

2  (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

3  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

4  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

5  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

6  55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

7  and effect of symptoms, and inconsistencies between testimony and conduct also may be

8  relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

9  to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

10  the ALJ in determining whether the alleged associated pain is not a significant nonexertional

11  impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

12  may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

13  1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

14  F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is

15  malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear

16  and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

17  1999).

18       The ALJ did not err when he found the testimony of plaintiff and the third party,

19  plaintiff's daughter, not credible.  AT 23.  Specifically, the ALJ reported that the degree of

20  limitation described by the plaintiff and the third party was inconsistent with plaintiff's daily

21  activities and the medical evidence.  Id.  In making this determination, the ALJ identified several

22  inconsistencies that caused him to discredit the relevant testimony.  AT 20.  In addition, the ALJ

23  gave great weight to the opinion of Dr. Campos and the multiple inconsistencies about which he

24  testified.  AT 22.

25       As it concerned her everyday activities, the ALJ cited numerous inconsistencies

26  that caused him to cast doubt upon plaintiff's credibility.  See Morgan, 169 F.3d at 600 (citing

5

contradictions between plaintiff's reported activities and his asserted limitations as a proper basis to assess credibility). The ALJ noted that plaintiff's testimony was that she had no schooling; however, the record indicated she may have had up to a fifth grade education.[3] AT 20, 98. Given the fact that plaintiff has been in the country nearly 30 years, and has put four children through the California public schools, such inconsistency cannot be the result of cultural or linguistic misunderstandings.

In addition, plaintiff testified that she had no friends. AT 90. However, plaintiff reported to Dr. Joyce on December 4, 2001, that she has no social isolation and occasionally visits with friends. AT 376. This statement was contradicted by testimony from the third party, as well as reports in the record, showing that plaintiff had friends and that she visited them in their home. AT 20, 70, 304, 376. Furthermore, plaintiff testified that she received visits from relatives in her home. AT 90.

Plaintiff testified and related to her physicians that she did not go anywhere, nor did she engage in any activities outside the home. She stated that her primary activity was "[j]ust sitting, watching TV." AT 63. However, as noted by the ALJ, this testimony is inconsistent with the evidence in the record showing that plaintiff went shopping with her daughters. AT 64, 71, 89, 305. Plaintiff also attended monthly medical appointments. AT 61. In addition, as noted by Dr. Drake, plaintiff traveled to Vietnam sometime prior to January 16, 2001. AT 383.

Finally, the medical record contained numerous inconsistencies relating to plaintiff's condition that the ALJ cited in making his credibility determination. Plaintiff gave contradictory reports Dr. Greenleaf and Dr. Drake of her reaction in response to her husband's

/////

---

[3]The ALJ found that plaintiff completed five years of schooling. However, on one form in the record, plaintiff indicated that she completed five years of schooling in 1954. AT 288. It should be noted that this is one year before plaintiff's birth on December 29, 1955, AT 115, 235, 276. Doctors Greenleaf and Joyce note that plaintiff completed 2nd grade.

1   death.  AT 22.  Not surprisingly, both doctors reached significantly different conclusions about

2   plaintiff's condition.

3          The ALJ found that plaintiff reported to Dr. Ghaemian on April 4, 2002, that she

4   did not suffer from anxiety, or panic episodes.  AT 22, 389.  However, plaintiff contradicted

5   these statements to Dr. Ghaemian at the hearing, testifying that her health made her "nervous and

6   scared," AT 66; "nervous all the time," AT 67; "nervous and...afraid of the crowd," AT 87; that

7   she was not living a normal life because she was "nervous most of the time," AT 87; and that the

8   nervousness "just came suddenly, making her shake and giving her a headache," AT 88.  While

9   the report of Dr. Ghaemian falls outside of the period in question in this case, the contradictions

10  contained therein are relevant to assessing plaintiff's credibility.

11         The ALJ was troubled by the inconsistencies between plaintiff's symptoms, her

12  testimony, and the medical evidence in the record.  These inconsistencies caused him to cast

13  doubt on the testimony of the plaintiff and the third party and to discount plaintiff's subjective

14  complaints.  AT 94.  See Waters v. Gardner, 452, f.2d 855, 858 n.7 (9th Cir. 1971) ("questions of

15  credibility and resolution of conflicts in the testimony are solely the function of the Secretary.")

16  Such inconsistencies are a permissible basis upon which to make a credibility determination and

17  will not be disturbed by this court.

18         b.  The ALJ did not Err by Discounting the Opinion of the Treating Physician

19         The weight given to medical opinions depends in part on whether they are

20  proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821,

21  830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

22  who has a greater opportunity to know and observe the patient as an individual.  Id.;  Smolen v.

23  Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

24         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

25  considering its source, the court considers whether (1) contradictory opinions are in the record;

26  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

7

treating or examining medical professional only for "clear and convincing" reasons.  Lester , 81

F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

professional's opinion generally is accorded superior weight, if it is contradicted by a supported

examining professional's opinion (supported by different independent clinical findings), the ALJ

may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give

weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172

F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional,

without other evidence, is insufficient to reject the opinion of a treating or examining

professional.  Lester, 81 F.3d at 831.

       While it may seem apparent, the treating physician is the doctor who "treats the

patient."  Lester, 81 F.3d at 830.  The treating physician is a "medical source who

provides...medical treatment or evaluation, and who has, or has had, an ongoing treatment

relationship with [the claimant]."  20 C.F.R. § 404.1502.  The source may not be one acquired

solely for the purpose of evaluation in order to apply for benefits.  Id.  The opinion of the treating

physician is given greater weight than the opinion of other examining or non-examining

physicians because of the treating physician's ability to provide a "detailed, longitudinal picture

of [the claimant's] medical impairment.  20 C.F.R. § 404.1527(d)(2).

       In this case, Dr. Drake is a treating physician for plaintiff.[4]  The ALJ found that

Dr. Drake examined plaintiff on two occasions at the request of plaintiff's attorney and

categorized him as an "examining physician."  AT 18, 21.  However, it cannot be said that these

---

       [4]Dr. Hung Hoang is also cited in plaintiff's brief as a treating physician.  However, other than references by other physicians, the record is devoid of any direct medical evidence provided by Dr. Hoang.

1    examinations were for the sole purpose of applying for benefits because, at the time of

2    examination, plaintiff was without a psychiatrist and treatment continued beyond the

3    examinations requested.  In this regard, Dr. Drake assumed responsibility for plaintiff's care and

4    established a long-term relationship with plaintiff with the purpose of treating and improving her

5    condition.  See Benton ex rel. Benton v. Barnhart, 331 F.3d 1030 (9th Cir. 2003) (citing

6    favorably the magistrate judge's analysis of what constitutes a treating physician in Ratto v.

7    Sec'y, Dep't of Health and Human Services, 839 F.Supp. 1415, 1425 (D.Or.1993)).

8    Consequently, unless contradicted by the medical evidence and rejected for specific and

9    legitimate reasons, the opinion of Dr. Drake as a treating physician must be afforded the

10   deference required under the law.  See Lester, 81 F.3d at 830.[5]

11          The ALJ found specific and legitimate reasons to discount the treating physician's

12   opinion in favor of the contradictory opinion of several examining and non-examining

13   physicians.  In discounting Dr. Drake's opinion, and choosing instead to rely heavily on the

14   opinion of Dr. Campos, the non-examining medical expert who testified on remand, as well as

15   the contrary medical opinions of Dr. Greenleaf, Dr. Saddiqui, Dr. Joyce, and Dr. Ghaemian, the

16   ALJ found that Dr. Drake's opinion was based entirely on plaintiff's subjective complaints and

17   departed significantly from the opinions of other doctors.  AT 22.  The ALJ determined that

18   plaintiff's subjective complaints about her condition were inconsistent and incompatible with her

19   daily activities and discredited them.  Id.  Consequently, reasoning that garbage in equals garbage

20   out, the ALJ properly found that any reliance on these discredited subsequent complaints by Dr.

21   Drake was necessarily flawed because of the dubious quality of their source.  Id.[6]  See Webb v.

22

23          [5]Even if the court were to find that Dr. Drake is only an examining physician, rejection of

24   his contradicted opinion in favor of a non-examining physician would still require "specific and
     legitimate" reasons supported by substantial evidence.  Andrews v. Shalala, 53 F.3d 1035, 1043
     (9th Cir. 1995).

25

26          [6]While the ALJ commented that Dr. Drake "examined [plaintiff] on two occasions on the
     request of [plaintiff's] attorney," AT 18, the court finds no evidence that the ALJ improperly

1  Barnhart, 433 F.3d 683 (9th Cir. 2005) (holding that, when presented with conflicting medical

2  evidence, the plaintiff's credibility and her subjective complaint bear on the evaluation of

3  medical evidence); see also Batson v. Comm'r of Soc. Sec. Adm'n, 359 F.3d 1190, 1195 (9th

4  Cir. 2004).

5          In addition to questioning plaintiff's credibility and the conclusions subsequently

6  drawn by Dr. Drake, the ALJ cited multiple contradictory opinions in the record.  See Magallanes

7  v. Bowen, 881 F.2d 747 (9th Cir. 1989) (upholding ALJ's findings contrary to treating

8  physician's opinion because of multiple contrary opinions and inconsistent testimony by

9  plaintiff).  The ALJ determined that Dr. Drake was the only physician who found plaintiff's

10 severe depression credible and who diagnosed that she was disabled in accordance with the

11 criteria of 12.04.  AT 21-22.  However, on December 10, 1999, examining psychiatrist Dr.

12 Greenleaf found only "mild depression and some cognitive deficits."  AT 323.  This opinion is

13 consistent with those that had been registered by previous doctors prior and subsequent to the

14 period in question.

15         The ALJ properly discounted Dr. Drake's opinion because of the quality of the

16 information upon which it was based.  Furthermore, the ALJ properly determined that the

17 multiple contrary opinions of other physicians cast doubt upon Dr. Drake's findings.  This

18 abundant contrary medical evidence, in conjunction with the specific concerns about credibility,

19 is sufficient to uphold the ALJ's decision to favor the examining and non-examining physicians'

20 opinions over the treating physician's.

21         c.  The ALJ's Hypothetical to the Vocational Expert was Complete and Supported by

22 Substantial Evidence in the Record.

23 ──────────────

24 discredited Dr. Drake because this relationship.  The purpose for which a medical opinion is
   solicited does not provide a legitimate basis to reject that opinion.  Lester, 81 F. 3d at 832; but
   see Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988) (permitting credibility determination
25 based upon the fact that doctor was hired to solicit a medical opinion).  There is no evidence in
   the record that Dr. Drake's opinion was affected by his relationship with plaintiff or her attorney.

26

Hypothetical questions posed to a vocational expert (VE) must set out all the substantial, supported limitations and restrictions of the particular claimant. <u>Magallanes</u>, 881 F.2d at 756.  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-23 (9th Cir. 1988).

In his hypothetical to the VE, the ALJ described plaintiff's questionable reliability and cooperation, as well as her depressive disorder.  He asked the VE to assume the plaintiff was a person in fair condition who could lift 25 pounds occasionally and 10 pounds frequently, and who could walk, stand, or sit for eight hours with appropriate breaks.  Furthermore, the ALJ asked the VE to assume plaintiff could perform only unskilled jobs.  Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. 404.1568(a).  In cross-examination, plaintiff's representative included plaintiff's lack of language skills in the analysis.  AT 110.

The VE responded that several jobs existed in sufficient numbers in the national economy that plaintiff could perform.  The jobs identified by the VE with the lowest language requirement included nut sorter, agricultural sorter, and assembler for small products.  A job identified by the VE with a higher language requirement included cannery worker.

Contradictory opinions of the extent of plaintiff's limitations exist in the record.  However, the hypothetical upon which the ALJ ultimately relied is supported by substantial evidence.  Plaintiff presented multiple scenarios to the ALJ that addressed a number of her alleged limitations.  However, as noted above, the ALJ did not credit these limitation nor the medical opinion of Dr. Drake.  The ALJ chose to rely instead on the testimony of Dr. Campos, as

1 well as the other physicians who diagnosed only mild to moderate limitations.  Substantial

2 evidence in the record supported such a choice and the hypothetical that flowed from it.

3        The ALJ properly determined the extent of the hypothetical based upon the

4 medical evidence supported in the record.  See Kornock v. Harris, 648 F.2d 525, 527 (9th Cir.

5 1980).  The ALJ's limitation of the hypothetical to those factual suppositions supported by

6 substantial evidence in the record, and his exclusion of those that were contrary, is not

7 objectionable.  See Sample v. Schweiker, 694 F.2d 639 (9th Cir. 1982).  The hypothetical

8 utilized by the ALJ to form his opinion was not in error.

9        The ALJ's decision is fully supported by substantial evidence in the record and

10 based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

11     1.  Plaintiff's motion for summary judgment or remand is denied,

12     2.  The Commissioner's cross-motion for summary judgment is granted, and

13     3.  Plaintiff's motion for EAJA fees is denied as moot.

14 DATED: April 27, 2006.

16                           UNITED STATES MAGISTRATE JUDGE

18 ggh13
19 luong1728.ver2.ss.wpd

12